**SUNI–CITRUS PRODUCTS CO. v. VINCENT et al.**

**Civil Action No. 1163–T.**

District Court, S. D. Florida, Tampa Division.

July 29, 1947.

Leroy Allen, of Tampa, Fla., and H. A. Toulmin, Jr., and Clayton E. Crafts, both of Dayton, Ohio, for plaintiff.

J. Tom Watson, Atty. Gen., Frank J. Heintz, and Sumter Leitner, Asst. Atty. Gen., and John J. Darby, of Washington, D.C., for State of Florida.

Perry & Miller and C. F. Milly, all of Washington, D. C., and Louis H. Hill, Jr., of Tampa, Fla., for Daniel B. Vincent.

Louis H. Hill, Jr., of Tampa, Fla., for J. Lawrence Perry, defendant.

Paull Dixon, of Tampa, Fla., and Arthur F. Robert, of Louisville, Ky., for defendant Arthur W. Lissauer.

De VANE, District Judge.

This action arises under the Anti-Trust Laws of the United States, primarily under Sections 1 and 2 of the Sherman Act and Sections 14 and 16 of Clayton Act, 15 U.S. C.A. §§ 1, 2, 15, 26. Certain provisions of the Purnell Act, 7 U.S.C.A. § 370, are also raised in the pleadings and both plaintiff and defendants pray for a declaratory judgment under the Federal Declaratory

Judgment Act of June 14, 1934, 28 U.S.C.A. § 400.

Plaintiff, Suni-Citrus Products Company, a Florida corporation, with its principal place of business at Haines City, Florida, is and has been since 1936, engaged in the business of manufacturing, processing, merchandizing and distributing stock feed manufactured from waste products of citrus fruit. Plaintiff operates under two patents, issued to its President, Emory L. Cocky.

The principal defendants are the State of Florida, certain of its boards and officials, and Daniel Boscawen Vincent. Citrus Processes, Inc., a Kentucky corporation, California Fruit Growers Exchange, a California corporation, Arthur W. Lissauer and J. Lawrence Perry are also named as defendants. Lissauer and Perry were served and filed Answers generally denying the allegations of the complaint, but they are not directly involved in the issues raised by the pleadings in the case. Citrus Processes, Inc., and California Fruit Growers Exchange were not served with process and are not before the court.

In brief, the complaint charges a combination and conspiracy between the State of Florida, its boards and officials named as defendants and Daniel Boscawen Vincent, to which the other named defendants have agreed to become parties, in unreasonable restraint of interstate trade and commerce in citrus waste products among the several States of the United States. It is charged that defendants are about to execute a patent pooling trust agreement and approve a form of a licensing agreement, under which they propose to prevent and suppress competition among the producers of citrus waste products, who manufacture and sell said products in interstate commerce and to unlawfully and illegally fix prices at which said products may be sold. It is claimed that the pooling of the patents and applications for patents held by defendants, in a proposed trust agreement, under which manufacturers will be licensed to use any of the several patents pooled, will secure a complete monopoly and control of the manufacture, distribution and sale of stock feed made from citrus fruit waste, a product vital to stock feeders throughout the United States.

Defendants Vincent and the State of Florida and its several boards and officials, admit the drafting and execution by them of the trust agreement referred to in the complaint. They, likewise, admit the intended execution of the trust agreement by Citrus Processes, Inc., and California Fruit Growers Exchange, but answer that it has not been executed by these parties. Plaintiff's case rests entirely upon the alleged invalidity of the trust agreement and proposed form of licensing agreement, under the provisions of the Sherman and Clayton Anti-Trust Acts.

There is a long history leading up to the execution of the trust agreement, part of which is the basis of this suit. Large quantities of citrus fruit are produced in the State of Florida. While citrus fruits have been produced in the State for many years, it was only about twenty years ago that processes were developed for canning citrus fruits and juices. In recent years this business has grown very rapidly in the State and in other States producing citrus fruits. This led to the necessity of finding some use for citrus waste resulting from canning processes.

Realizing the importance of the citrus industry to the State's welfare and the importance of developing some process for utilizing citrus waste, the State of Florida, in 1933, placed Dr. Wayne M. Neal, a chemist, in charge of a project to conduct experiments for the profitable use of citrus waste. Dr. Neal was then an employee of the State, working at the State Agriculture Experiment Station. The project which the State set up at the State Agriculture Experiment Station was partly financed by grants of money from the Federal Goverment, under the Purnell Act.

Dr. Neal perfected a process for producing an edible food product from citrus waste and filed his application for a patent thereon, which he later assigned to Citrus Patents Company. The State, upon learning of such assignment, sued Dr. Neal and Citrus Patents Company, claiming that by reason of Neal's employment, the State was owner of his application and any patent issued thereon. The Florida Supreme Court sustained the State's position and held the Neal application for patent was

the property of the State and said application was subsequently assigned to the State.

This litigation consumed a great deal of time, and for that reason and others to be mentioned hereafter, the Neal application has not matured into a patent. The application is still pending in the Patent Office.

Defendant, Vincent, is also the holder of a patented process for the production of stock feed from citrus waste. His patent was first issued to him on September 24, 1940. Some years ago Vincent brought suit against plaintiff in this case, alleging an infringement of his patent by plaintiff. For reasons not shown in the record of this case, Vincent surrendered his patent and had a new patent issued to him on April 8, 1947, and upon receipt of the new patent, dismissed the patent infringement suit against plaintiff. It is conceded by plaintiff and by defendant Vincent that there is now no infringement between the patents held by them.

Defendant Vincent also brought suit against the State, alleging the Neal application constituted an infringement of the patent issued to him. That litigation was not affected by the new patent issued to Vincent and is still pending in the courts of the District of Columbia. Defendants Vincent and the State of Florida set forth in their Answers that it was because of this litigation between them that the trust agreement and the proposed form of licensing agreement were agreed to. They say they are seeking to settle their controversy by agreement instead of by litigation.

The other patents that will go into the patent pool are owned and controlled by Citrus Processes, Inc. This is the same company, under a new name, that acquired the Neal application. It is also the owner of certain territorial rights under Letters Patent No. 1,973,084, issued to one Lewis; Cole & Hall Patent No. 1,991,242; Lissauer Patent No. 2,187,501; Lissauer and Credo Patent No. 2,362,014; and the applications of one Finley, No. 196,948 and No. 384,848. These patents and patent applications also relate to the production of food products from citrus waste.

California Fruit Growers Exchange is the exclusive owner of certain territorial rights in and to the several Letters Patent owned by Citrus Processes, Inc. Defendants Vincent and the State claim that there is some interference between some of the patents owned by Citrus Processes, Inc., and the Vincent patent and the Neal application. It is further claimed by Vincent and the State that the pooling of these patents will end the claims of interference and avoid litigation involving infringements and thus enable licensees, securing licenses under the trust agreement, to operate without molestation.

While the prayer of the complaint contains nine grounds for relief, including a prayer for a declaratory judgment and the ascertainment of damages suffered by plaintiff as the result of the alleged unlawful acts of defendants, at the final hearing plaintiff asked for an adjudication upon only two questions raised by the complaint, viz.:

(1) The execution of the trust agreement by the State and Vincent and the agreement and concerted action by all the defendants in combining to bring about the execution of the trust agreement and approval of the form of the licensing agreement constitute a violation of the Anti Trust Laws of the United States, as being an unreasonable restraint of interstate trade and commerce.

(2) The payment of the salary of Dr. Wayne M. Neal, the inventor of the process for which patent application has been made by the State, from Purnell Act funds and the contribution of those funds to the support of the State Agricultural Experiment Stations through whose facilities the Neal invention was perfected, constitute a dedication of the State's invention to the public at large.

■ *The Trust and Licensing Agreements.* The primary attack made upon the trust agreement and the proposed form of licensing agreement is that the pooling of the various patents and the Neal application for the purposes set forth in the trust agreement is illegal as an unreasonable restraint of interstate commerce and is in violation of the Sherman and Clayton Anti-Trust Acts. The facts upon which the answer to this question, and to all other questions raised by plaintiff depends, are not in dispute. The court finds and holds that the

undisputed evidence before the court does not sustain the allegations in the complaint upon this issue.

The complaint alleges, and the defendants admit, that in 1946, at the time of the filing of the complaint herein, plants for the production of citrus waste products were located in Florida, Texas and California and interstate shipments of such products was made from such plants to every State in the Union. The complaint further alleges there were seventeen companies in Florida; four companies in Texas (with two new companies about to enter the trade) and numerous companies in California (number not stated), producing citrus waste products at the time of the filing of the complaint. Defendants admit this allegation in the complaint and state further that since the filing of the complaint many additional plants have been put into operation. Many of these plants, including plaintiff's, operate under patents and use processes for the manufacture of citrus waste products, that are not affected by the trust agreement. There is keen competition between them.

Counsel for plaintiff state in their brief: "Dr. Wayne M. Neal, a chemist, was one of the early experimenters and inventors of methods to produce citrus waste products. In the 30's he was employed by the State of Florida at the State Agricultural Experiment Station." Dr. Neal filed his application for patent on August 13, 1935 and for reasons heretofore stated no patent has ever issued on this application. The record shows that litigation is pending between Vincent and the State involving the validity of the application. It is also claimed by defendants, Neal and the State, that the several patents held by Citrus Processes, Inc., are in conflict with the Neal application and will be in conflict with the Neal patent when it issues.

It is not claimed by plaintiff that any patent controlled by it or controlled by others, not parties to the trust agreement, and now in use for the processing of citrus waste products are in conflict with any of the patents covered by the trust agreement. So far as this record shows only the patents incorporated in the trust agreement will be affected by the arrangement and plaintiff does not controvert the claim of defendants that interference between several patents covered by the trust agreement will be eliminated through the agreement. The evidence, therefore, does not sustain plaintiff's claim that the pooling of the various patents and applications for patents for the purposes set forth in the trust agreement will illegally affect its business or the business of others not parties to the agreement. They will remain as free as they are today to continue their operations in interstate commerce.

Pushing aside all collateral and subsidiary questions raised by the pleadings, the controlling question before the court upon this issue is whether, under the facts of this case, the case is ruled by the law laid down by the United States Supreme Court in United States v. National Lead Co. et al., 67 S.Ct. 1634, and the many other cases cited by the court and the District Court (United States v. National Lead Co. et al., D.C., 63 F.Supp. 513), in support of the judgment in that case, or by the law laid down by the same court in Standard Oil Co. et al. v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926 and other decisions of the United States courts to the same effect. The court finds and holds that the facts in this case are in no respect similar to the facts in the case of United States v. National Lead Co. et al., supra, but are in all respects similar to the facts considered by the court in Standard Oil Co. et al. v. United States, supra, and that the latter case is controlling here.

Plaintiff raised numerous subsidiary questions, some of which require consideration by the court. Plaintiff contends that the allocation of territorial rights to California Fruits Growers Exchange on a substantially royalty-free and preferential basis is illegal and a violation of the Sherman and Clayton Anti-Trust Acts. The territorial rights granted California Fruit Growers Exchange are non-exclusive. Moreover, such rights cannot truly be said to be on a royalty-free basis. The California Fruit Growers Exchange waives its right to royalties in consideration of the non-exclusive license given it for California and Arizona. It is not within the province of this court in this suit to ques-

tion the reasonableness of this compensation agreed to between the parties. See Transparent Wrap Machinery Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610.

The Supreme Court, in Standard Oil Co. et al. v. United States, supra, approved a provision allocating territorial rights in the license agreement there involved, in many respects similar to that involved in this case The facts in this case are in no respects like those found by the court to exist in United States v. National Lead Co., supra, relied upon by plaintiff. In that case the territorial rights condemned were exclusive territorial rights and were established for the purpose of suppressing competition. California Fruit Growers Exchange gets no such territorial rights under the trust agreement involved in this case.

■ The court also finds no merit to plaintiff's contention that the tying-in of an unpatented process with patented processes results in a combination and monopoly to control unpatented products. See Standard Oil Co. et al. v. United States, supra; Transparent Wrap Machinery Corp. v. Stokes & Smith Co., supra.

There is substance to plaintiff's contention that a combination of competing patents and applications for patents, for the purpose of obtaining domination of a field of industry, where such competing patents are the only commercially applicable methods of producing the product in that field of industry, is illegal and in violation of the Anti-Trust Laws of the United States. But, as heretofore pointed out, the facts in this case pose no such issue. It is not even contended by plaintiff, in its complaint, that the patents covered by the trust agreement "cover the only commercially applicable methods" of producing a satisfactory stock feed from citrus waste. Plaintiff and others are actively engaged in the production of stock feed from citrus waste under patents which, admittedly, in no way conflict with the patents covered by the trust agreement.

Plaintiff further contends that the intention of the defendants to proceed under the trust agreement and licensing agreement is, in itself, sufficient to sustain a judgment in favor of plaintiff, on defendants' prayer for a declaratory judgment. The court has held the mere pooling of the various patents and patent applications for the purposes set forth in the trust agreement does not constitute a violation of the Anti-Trust laws. This objection fails for the same reason.

■ The court finds no legal support for plaintiff's claim that as a valid patent is indispensable to the right to fix prices it is illegal to fix prices for a patented article until the patent has been judicially adjudicated valid. The cases clearly hold to the contrary. See Standard Oil Co. et al. v. United States, supra; Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316, and Mumm v. Decker & Sons, 301 U.S. 168, 170, 57 S.Ct. 675, 81 L.Ed. 983.

■ Plaintiff raises legal objections to the price fixing provisions of the trust agreement. There is no substance to the objections. The trust agreement provides that the State, through its committee members, created by the trust, may fix prices upon two contingencies, viz.:

(1) Should the Neal patent, when issued, contain claims covering licensed products, or under any other patent initially owned by the State containing such claims, licenses issued for the use of such patents, shall contain a provision that the licensee shall not sell the products licensed under the Neal patent for less than a fair and reasonable minimum price to be determined solely by the members of the committee appointed by the State or by other duly appointed State representatives acting by virtue of legal authority in the State of Florida, and

(2) To include in all licenses granted in the State of Florida a provision or restriction in respect to the minimum sale price of licensed products manufactured and sold in the State of Florida as may be authorized by law, said price, if and when established, to be determined solely by those members of the committee appointed by the State or by other duly appointed State representatives acting by virtue of legal authority in the State of Florida.

The court finds nothing illegal with this price fixing authority granted by the trust

agreement. As to the condition under which the State may fix fair and reasonable minimum prices for products shipped in interstate commerce, this provision is clearly patterned after a similar provision contained in the contract before the Supreme Court and approved by it in United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362. The power granted the State to fix minimum prices for products sold in intrastate commerce, by licensees is in accordance with the law established by the Supreme Court in Parker et al. v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L. Ed. 315.

Plaintiff advances other objections to the pooling of the patents, such as, for example, a licensee may not avail himself of and use all the rights granted under the license and he, therefore, would be paying for something for which he had no use or need. But the court does not consider there is enough merit in this or the other subsidiary questions raised to discuss them here.

 *Use of Purnell Funds by State and Its Effect upon the Neal Application For Patent:* Plaintiff contends that the use of Purnell funds for part support of the Florida Agricultural Experiment Station and the payment of the salary of Dr. Neal out of these funds while he was working on the processes he proposes to patent, effectively dedicated the Neal application to the public at large. The court finds no merit to this contention. •

The question of ownership of the Neal application was settled by the Supreme Court of Florida in State et al. v. Neal et al., 152 Fla. 582, 12 So.2d 590, certiorari denied, 320 U.S. 783, 64 S.Ct. 191, 88 L.Ed. 470, 320 U.S. 814, 64 S.Ct. 259, 88 L.Ed. 492. In this case the Supreme Court held that the State owned the Neal application and cancelled his assignment of the application to Citrus Patents Company. Following this decision Dr. Neal assigned his application to the State. The Supreme Court's decision was rendered March 23, 1943. The 1943 Legislature, which met shortly thereafter, passed an Act, Chapter 21959, F.S.A. §§ 272.01, 272.02, granting to the Board of Commissioners of State Institutions, for the benefit of the State of Florida, the title to all patents, trade-marks or copy-rights now or hereafter owned or held by the State of Florida or any of its boards, commissions or· agencies; and authorized said Board of Commissioners of State Institutions to do any and all things necessary to obtain, license, lease, sell or enforce the rights of the State of Florida therein. This act prohibits the use by any person, firm or corporation of any patent owned by the State without the consent of the Board of Commissions of State Institutions and authorizes said Board to grant such use on a royalty basis or for such other consideration as the Board shall deem proper.

The Supreme Court of Florida considered the effect of the Purnell Act in passing upon the right of the State to the Neal application and held that said Act did not affect the State's ownership and control of the patentable process developed by Dr. Neal, even though Purnell Act funds were used in the development of such processes. This court considers the interpretation placed upon the Purnell Act by the Supreme Court of Florida a correct one and that the State of Florida acquired title to and is the owner of the Neal application. Whether the State of Florida was entitled to Purnell Act funds in view of the laws of Florida, with reference to the ownership and use of patents secured from studies made by State employees, part of whose salaries or expenses are paid' by such funds, is a question for The Federal Agency administering the funds when they are allocated and not a question to be adjudicated by this court in this case.

Upon the uncontradicted evidence in this case the court holds that plaintiff has not carried the burden of showing that the proposed trust and licensing agreements, if finally approved and executed in their present forms, would constitute a violation of the anti-trust laws of the United States and plaintiff's prayer to enjoin and prohibit the execution and putting into effect said agreements is denied.

 Defendants, State and Vincent, filed cross-complaints in their Answers in which they requested this court to enter a declaratory judgment declaring the trust and licensing agreements to be valid and not in violation of the anti-trust laws of the United States. Their prayer for a declaratory

judgment is premature. The trust agreement has not yet been executed by all parties and for this reason has not yet matured to a point where this court has the authority to pass upon its legality. Moreover, the court entertains grave doubt as to the applicability of the Declaratory Judgment Act to this case. The prayer of defendants, State and Vincent, therefore, for a declaratory judgment, declaring the proposed agreements valid, is denied.

A final judgment will be entered in conformity with this memorandum decision.