**SUNI–CITRUS PRODUCTS CO. v.
VINCENT et al.**

No. 12309.

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1948.

Harry Aubrey Toulmin, Jr., of Dayton, Ohio, LeRoy Allen, of Tampa, Fla., and Max F. Goldstein, of Atlanta, Ga., for appellant.

Charles F. Miller, Jr., and John J. Darby, both of Washington, D. C., Lewis H. Hill, Jr., and Paull E. Dixon, both of Tampa, Fla., J. Tom Watson, Atty. Gen. of Fla., and Frank J. Heintz and Sumter Leitner, Asst. Attys. Gen. of Fla., for appellee.

Before HUTCHESON, SIBLEY, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought for injunction and for treble damages, the suit was to restrain, as violative of the anti-trust laws [1] of the United

---

[1] The Sherman Act, as amended, 15 U.S.C.A. §§ 1 & 2. The Clayton Act, 15 U.S.C.A. §§ 15 & 16.

States, the completion and putting into effect of a partially completed trust agreement[2] for pooling conflicting patents, granting licenses,[3] and fixing minimum prices in the citrus feed industry.

Alleging: that plaintiff is a manufacturer of a citrus waste product suitable and desirable as a cattle feed; that, prior to the complained of agreements of defendants, the market price for plaintiff's products, as well as for that of other manufacturers in competition with plaintiff had been established by free competition; that defendants, owning and claiming to be the owners of, letters patent and an application for letters patent by one Wayne M. Neal, had entered into an agreement for the purpose of combining and pooling their patents and patent claims, of fixing royalties, and of fixing prices of products manufactured under the Neal application and the patent to be granted on it; plaintiff's claim was that the complained of agreements are in violation of the anti-trust laws and their effect will be to injure and harass plaintiff and other citrus waste processors. There was a further claim that the subject matter of the Neal application was public property and not patentable because the payment of Neal's salary, while working for the State of Florida, had been made out of Purnell Act[*] funds.

The State of Florida admitted that it is the owner of the Neal application for letters patent, and that the application was filed by Neal while an employee of the State of Florida and while the State was the recipient of the Purnell funds. It denied that the subject matter of the application was thereby made a part of the public domain. Denying that it and the other defendants were joined in an agreement or combination in restraint of trade, it alleged that it had conducted negotiations with Vincent and the other defendants, with the result that a tentative trust agreement had been formulated but not yet signed by the trustee for the purpose of protecting processors of citrus waste against destructive patent suits, and when and if minimum prices are established by the State, to insure that products covered by patent claims resulting from the Neal application are not sold below cost of the product.

The defendant Vincent made substantially the same answer and also filed a counter-claim, in which, setting out that he had been charged with conspiracy to restrain trade, he denied that this was so. Pleading his patents and the contests over them, he further alleged that in an effort to settle these patent conflicts and bring peace to the citrus waste industry, he had entered into negotiations with the State of Florida looking to the settlement proposed in the tentative trust and license agreements, Exhibits A and B. Alleging that they are not in violation of the anti-trust acts, he sought a declaratory judgment to that effect.

There was a reply by plaintiff to both counter-claims, a pre-trial conference at

---

[2] The trust agreement, between Vincent, the State and the Trustee, purported to pool certain patents by assigning them to the trustee, and to create a trust committee under whose directions the trustee would act. The powers of the committee included: the right to fix royalties; the right to include, in licenses, price fixing limitations upon the licensed products covered by the Neal patent when the prices had been fixed by members of the committee appointed by the State or other state representatives acting by virtue of legal authority in the State of Florida; and the right to include, in the licenses, price restrictions on products manufactured and sold in the State of Florida if and when these prices are fixed by virtue of legal authority in the State of Florida. The trust agreement also fixed the percentage of royalties to be paid to the persons entitled. .

[3] The license agreement contained an agreement recognizing the authority of the State of Florida to fix prices for the sale of products manufactured or sold within the State of Florida when authorized by the laws of the State and on any products wherever in the United States manufactured or sold if they are embraced in the claims of any United States patents issued on the Neal application. There was also a provision that if 50% of the persons engaged in the processing of citrus pulp in any season refused to obtain a license or pay royalties, then the royalties payable under this license shall abate.

[*] 7 U.S.C.A. § 146.

which a long statement, afterward made a part of the record, was made by defendant Vincent, an amendment to Vincent's answer showing that since the filing of the suit and the pre-trial conference, Vincent's patent had been reissued and that it would be assigned to the trustee in substitution of the original Vincent patent.

Thereafter, plaintiff filed a motion for judgment on the pleadings, stipulations, the report of proceedings, and the statement of counsel for the defendants at the pretrial conference,[4] and argument was joined on two questions [5] of law: (1) The primary question, whether the entering into the trust agreement was per se a violation of

[4] The stipulations, statements, etc. show: that the defendants would furnish witnesses to testify, and the plaintiff would not controvert them, that in negotiating for and preparing the tentative trust and license agreements, the parties had not intended to oppress or harass plaintiff, or anybody else, but had intended merely to bring order and prosperity to the citrus business, which was harassed by conflicting patents.

In the same way they showed that the royalty intended to be exacted if the agreement should be put into effect would not exceed $1.00 per ton; that licenses would be available without discrimination to all responsible persons in the United States; that the price of citrus feed in Florida has increased since Jan., 1944, from $32.50 to $42.50 per ton; that the cost of manufacturing citrus feed under Vincent's patent would be approximately $18.00 or less per ton.

In his statement, Vincent said that the original and other copies of the trust agreement had been duly executed by the Board of Commissioners and by Vincent, although the arrangement had not been completed through acceptance by the trustee and assignment of the patents. "However, it is admitted that unless restrained by the court it is the purpose and intent of all parties to complete the arrangement. In view of plaintiff's suit no further proceedings were taken or would be taken by any of the parties until the suit was determined, since it was felt only proper to await the decision." Vincent further stated: "We believe and desire that the court at this time pass upon the anti-trust features of this complaint 1163, and on the question presented concerning the Purnell Act. I am authorized to state on behalf of all parties to the proposed trust agreement that if the court agrees with our contention that there is nothing illegal about such proposed trust agreement and that no free use attaches to any patent issued in the Neal application, then it is the purpose of these defendants to proceed as expeditiously as possible to conclude the trust arrangement."

Mr. Toulmin, for plaintiff, stated, "We propose to rest our case on the pleadings in this case". Again he stated, "The issue fundamental is whether or not the proposed trust agreement and the proposed license agreement, which have been partially executed and which the defendants say they will execute and carry out if they are not restrained by the court, constitute violations of the antitrust laws of the United States."

Mr. Darby, for the defendants, stated: "First of all, as far as the State and Vincent are concerned, the trust agreement is a completed agreement. All that is necessary is for the trustee to accept the trust, the license is a typical form of license which has been agreed upon, as the pleadings show, contrary to the suggestion that this is a request for an advisory opinion, that is not correct. We completed it, we have said we are going through with it unless the court holds that we should not do so."

In the course of these discussions, the district judge said:

"But you gentlemen must remember that in submitting this case to me that I cannot acquiesce in you gentlemen making a moot Court case issue before me in passing upon the legal questions involved in a moot case. In passing upon the legal questions involved in a moot case, the Supreme Court and all of the Courts say we can not lend ourselves to that kind of practice, * * *."

[5] This is the way appellant, plaintiff below, states them:

"(1) The execution of the trust agreement by the State and Vincent and the agreement and concerted action by all defendants in combining to bring about the execution of the trust agreement and approval of the form of the licensing agreement constitute a violation of the Anti-trust Laws of the United States, as being an unreasonable restraint of interstate trade and commerce.

(2) The payment of the salary of Dr. Wayne M. Neal, the inventor of the process for which patent application has been made by the State, from Purnell Act funds and the contribution of those funds to the support of the State Agricultural Experiment Stations through whose facilities the Neal invention was perfected constitute a dedication of the State's invention to the public at large."

the anti-trust laws; and (2), the subsidiary one, whether the Neal invention had been dedicated to the public.

The district judge, of the opinion that the pooling of the various patents and the Neal application, for the purpose set forth in the trust and license agreements was not illegal, cited in support: Standard Oil v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926; Westinghouse v. Formica, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316; Mumm v. Decker, 301 U.S. 168, 170, 57 S.Ct. 675, 81 L.Ed. 983; United States v. General Electric Co., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362; and State v. Neal, 152 Fla. 582, 12 So.2d 590. He, therefore, held that: "Upon the uncontradicted evidence in this case * * * plaintiff has not carried the burden of showing that the proposed trust and licensing agreements, if finally approved and executed in their present forms, would constitute a violation of the anti-trust laws of the United States and plaintiff's prayer to enjoin and prohibit the execution and putting into effect said agreements is denied." [72 F.Supp. 740, 746.]

As to the cross-complaints of the State and Vincent for declaratory judgments, declaring the trust and license agreements valid and not in violation of the anti-trust laws of the United States, the court held: "Their prayer for a declaratory judgment is premature, the trust agreement has not yet been executed by all parties and for this reason has not yet matured to a point where this court has the authority to pass upon its legality. Moreover, the court entertains grave doubt as to the applicability of the declaratory judgment act to this case. The prayer, therefore, for a declaratory judgment declaring proposed agreements valid is denied".

Upon the basis of these views thus announced, there was a judgment: (1) "That the complaint should be and hereby is dismissed on the merits"; (2) that the defendants recover costs; and (3) "that defendant's prayer for declaratory judgment be, and it is hereby denied"; and plaintiff has appealed.

Here appellant, upon the authority of United States v. Line Material Co., 333 U.S. 287, 68 S.Ct. 550; United States v. U. S. Gypsum Co., 333 U.S. 364, 68 S.Ct. 525; United States v. Griffith, 334 U.S. 100, 68 S.Ct. 941; Federal Trade Com'n v. Morton Salt, 332 U.S. 850, 68 S.Ct. 355; Id., 334 U.S. 37, 68 S.Ct. 822; International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12; United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915; insisting that the judgment was wrong, seeks its reversal.

Appellees, upon the basis of the authorities relied on by the court below, insist that the judgment was right and should be affirmed.

Interesting as these contentions are, we find it unnecessary to resolve, or even to consider, them. We agree with the district judge's view that defendants' prayer for a declaratory judgment was premature for the reason he gave, that the trust agreement had not yet been executed by all parties and for that reason had not yet matured to a point where the court had authority to pass upon its legality.

For the same reason plaintiff's suit was premature, and should have been dismissed as such. But it was premature for other reasons. The agreement, which plaintiff alleges constitutes per se the conspiracy charge, provides in terms for the appointment of a committee to act with the trustee in carrying out the trust. It is undisputed that the trustee has not accepted the trust and that no committee has been formed. The trust agreement provides for fixing prices interstate only in respect of licensed products covered by claims under a Neal patent issued upon the Neal application, and then only if the price "is determined solely by those members of the committee appointed by the state or by other duly appointed state representatives acting by virtue of legal authority in the State of Florida". It is admitted that no Neal patent has issued and that until one does issue, no price fixing will be attempted, and no authority in this respect exercised. It is admitted that no members of the committee have been appointed by the state, and that no other duly appointed state representatives acting by virtue of legal authority in the State of Florida have appeared to exercise the power.

Matters standing thus, what the plaintiff has presented to the court is not an actual controversy for decision or an actual threatened injury for redress. It is a request for an advisory opinion on a purely hypothetical situation, which has not arisen, and which may or may not arise according to whether the trust instrument is or is not fully signed and made effective by the appointment of the committee under it and the obtaining of legal authority from the State of Florida with respect to fixing prices, and whether a Neal patent containing product claims is granted.

In these circumstances, instead of declining merely to entertain defendants' counter-claim, the district judge should also have declined to take cognizance of plaintiff's complaint and dismissed it without prejudice.

The judgment is reversed and the cause is remanded with directions to dismiss it without prejudice.

